McTighe, Hughey & McTighe v. Johnson.

[75 South. 600, Division A.]

1. APPEAL AND ERROR. *Harmless error. Admisibility of evidence.*

In a suit against road construction contractors for damages caused by their negligently leaving dynamite in a vacant house, any error in admitting evidence regarding dynamite left at other places, and at other times, by defendant's employees was not reversible error, where there was ample testimony that defendant stored dynamite in the house where the accident happened.

2. EXPLOSIVES. *Use of dynamite. Care required.*

The degree of care required of persons having the possession and control of dangerous explosives, such as dynamite, is of the highest, the utmost caution must be used to the end that harm may not come to others coming in contact with them.

3. EXPLOSIVES. *Proximate cause. Injury from dynamite.*

Parties leaving dynamite unguarded in vacant dwelling houses should anticipate that the house would be reoccupied by someone and if reoccupied, that small children would be there to play in and about the premises and such dynamite might result in injuring them.

4. TRIAL INSTRUCTIONS. *Care by other instructions.*

In an action against road construction contractors for negligently leaving dynamite in a vacant dwelling house where plaintiff, an infant, was injured, an instruction that it was no defense whatever, that the house was vacant, while literally not correct, was not reversible error, where the instruction further contains the essential hypothesis that the jury must believe from the evidence that the defendant negligently left exposed the dynamite which injured the plaintiff.

APPEAL from the circuit court of Copiah county. Hon. J. B. HOLDEN, Judge.

Suit by Mary Willie Johnson, by next friend, against McTighe, Hughey & McTighe. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*R. N. Miller* and *H. J. Wilson,* for appellant.

·The universal rule seems to be that the fact that the same or another person for whom the defendant is responsible did a similar negligent act or showed similar negligent management is irrelevant and cannot be shown. *Malton* v. *Nesbit,* 1 I. C. & P. 70; *Edwards* v. *Ottowa River Navigation Company,* 39 U. C. Q. B. 264; *Southern Bell Tel. & Tel. Co.* v. *Watts,* 66 Fed. 461; *Lake Erie & W. R. R. R. Co.* v. *Morain,* 140 Ill. 117; *Chicago, B. & Q. R. R. Co.* v. *Lee,* 60 Ill. 501; *Southern R. R. Co.* v. *Kendrick,* 40 Miss. 374; *Mississippi Central R. R. Co.* v. *Miller,* 40 Miss. 45; *Dalton* v. *Chicago R. I. & P. R. Co.,* 114 La. 257; *Chicago R. I. & P. R. R. Co.* v. *Durant,* 56 Kan. 380; *Hutchinson* v. *L. & N. R. R.,* 21 Ky. L. 733; *Parker v. Portland Publishing Co.,* 69 Me. 173; *Clark* v. *Smith,* 72 Vt. 138; *Christenesen* v. *Union Trunk Line,* 6 Wash. 75.

Under the declaration appellee was confined to the negligent leaving of the cap in the house where the accident occurred. The *locus in quo* was fixed by the declaration. The instruction referred to was entirely erroneous under the proof in the case. Under it the jury were permitted to consider the leaving of dynamite and caps at other places as acts of negligence of appellants. It is easy to understand how counsel for appellee would argue to the jury that appellants were grossly careless and negligent in the handling of explosives and would recite in most impressive manner the finding of dynamite and caps up and down the public roads in that county. This unquestionably was sufficient to overbalance the good judgment of the average juror and no doubt contributed very largely to the verdict that was rendered.

In the next place, we insist that the evidence was insufficient to fasten liability on the defendants and the peremptory instruction asked by them should have been granted by the court. The declaration charged that the defendants stored dynamite and dynamite caps in, about

and under the house where the injury occurred. The proof offered by the plaintiff which, taken as a whole, is of a very doubtful and uncertain character, is directed entirely towards the placing of dynamite and caps in the house. The most that can be said of it in favor of plaintiff is that some two or three witnesses saw a box containing sticks of dynamite and a small box of caps setting inside the front room of the house. Another witness for the plaintiff testified that he saw Gilbert McDonald, an employee of the defendants, go into the house for dynamite and come out, but he did not say that he saw him carry any dynamite into the house or bring any out. Another witness testified that on one occasion he saw a box of dynamite caps lying at the edge of the front gallery and two sticks of dynamite in the door; he returned later and both were gone. As to who placed the sticks of dynamite in the door or left the box of caps exposed under the edge of the gallery is not shown.

We beg to call the court's attention to several well-considered cases which are almost identical with the case at bar. *Conley* v. *Ennis' Adm'r.*, 170 Ky. 135; *Birmbaum* v. *Philadelphia, etc., R. R. Co.*, 249 Pa. 238; *Garalka* v. *Worth Bros. Co.*, 245 Pa. 467.

It cannot be said that the placing of dynamite caps inside the house by the defendants' agents was the proximate cause of the injury complained of, because there is no connection shown between the caps that were left inside of the house and the caps that were found secreted on the sill under the house. Negligence cannot be inferred; it must be proven by competent testimony. There is no causal connection between any act of the defendants agents and the injury that was inflicted upon the plaintiff. It was therefore manifestly error that this cause should have been submitted to the jury.

We submit, therefore, upon this proposition alone this court should reverse this cause.

*R. H. Thompson,* for appellee.

The first position of adverse counsel is a claim that the trial court erred in permitting the plaintiff to show several acts of negligence by defendants other than those specifically charged in the declaration. This position is based upon an unwarranted assumption. It proceeds upon the idea that the declaration can be maintained only by proof that defendants designedly and intentionally stored the explosives in the house where plaintiff was injured. The truth is that in legal contemplation, defendants placed the explosives in the house if they negligently allowed them to be placed there. And plaintiff was properly allowed to prove by circumstances, or otherwise, that the defendants negligently failed to take proper cautions in the management and control of its explosives and as a consequence parts of them were wrongfully stored in the house.

The court below did not err in overruling appellant's motion to exclude all the testimony showing the finding of dynamite and dynamite caps at places other than the house where plaintiff was injured. To have excluded this testimony would have been to adjudge that plaintiff could not prove her case by circumstantial evidence.

The seventh instruction given for defendants informed the jury of the two issues above mentioned and told them not to find for the plaintiff on the ground that defendants had negligently exposed dynamite, etc., at places other than the one where plaintiff was injured, even if the explosives negligently left elsewhere were carried by other persons to the house where plaintiff's hand was blown off.

While this instruction was unwarrantedly liberal for defendants, it held the jury to the real issues in the case and treated the testimony complained of as being but circumstances to be considered in finding one of the real

issues in the case.  Defendants surely were not entitled to have this testimony excluded or treated more to their advantage.

The case of *Malton* v. *Nesbit,* 1 C. & P. 70, and the other cases cited by appellants' attorney in his argument on this point are easily distinguishable from this one.

In this case, under defendant's seventh instruction, the jury found as a fact that the defendants were "negligent in the handling of the caps and in exposing them near the place where the injury occurred," since they were required by the instruction to so find, before they could return a verdict for plaintiff; and this finding renders entirely harmless, so far as any other view of the case is concerned, all testimony of which appellants complain. The criticism passed by their attorney upon the third in-instruction shows appellants' conception of this case. They conceive that their motion to exclude testimony should have been sustained, and that the alleged injury done their defense is emphasized by plaintiff's said in-struction.  This conception and an insistence on it by im-plication, admit that the testimony was inadmissible alone because the defendants would not, as they claim, have been liable, no matter how negligently they may have exposed the explosives, if the same were found, where exposed, by Johnson's children and carried to the place of injury.  Appellants' conception of the case is a faulty one.  If defendants negligently left the ex-plosives exposed where they were likely to be found by children no matter where, certainly if so left in the vicinity of Johnson's house, and they were found by his children and the explosion and consequent injury of plaintiff resulted from her handling one of the caps, ap-pellants are liable, whether the explosion occurred where the explosives were found, or where the children carried them, whether one foot or a greater distance away from the place where found.  The basis of appellants' com-

plaint of the testimony being fallacious, their objection thereto is without merit.

The cases cited by counsel for appellants near the end of his brief, *Conley* v. *Ennis' Administrator,* 170 Ky. 125; *Birmbaum* v. *Philadelphia R. Co.,* 249 Pa. 236; and *Gralka* v. *Worth Bros. Co.,* 245 Pa. 467, are so very different from the case at bar as to be almost wholly, if not entirely, inapplicable to this cause.

Stevens, J., delivered the opinion of the court.

Appellants were defendants in the court below in an action for damages, instituted by Mary Willie Johnson, a minor, by Amzi Johnson, her father and next friend. Appellants, as contractor, entered into a contract with the proper authorities of Attala county to construct and improve certain highways, one of which is referred to as the "Natchez Trace" Road. It appears that they were also awarded the contract to construct the Greensboro Road and the Louisville Road, but the actual work of improving the last-named road, and also a portion of the Natchez Trace, south, was done by persons employed by appellants under an arrangement which appellants contend characterizes them as subcontractors. It appears that the Natchez Trace Road and the Greensboro Road were at some places only a mile or two apart. Plaintiff's father, Amzi Johnson, with his wife and several small children, occupied a house near the Natchez Trace Road during the time that the defendants were grading and surfacing this highway, being tenants of one Crosby. The landlord, Mr. Crosby, also owned a vacant dwelling house located some ten or fifteen feet from the Natchez Trace Road and about two hundred yards from the house in which Johnson and his family resided. The uninhabited house contained some fodder and cornstalks. The testimony shows that, on several occasions,

the employees of appellant entered the vacant house while they were working near it, on one occasion seeking shelter therein from a rain. The testimony is sufficient to show that these employees carried dynamite and dynamite caps on the premises of this vacant house. The contractors in building the highway, which passed near the premises, made use of considerable quantities of dynamite. The house which Johnson and his family occupied having been destroyed by fire, he moved into the vacant house of his landlord, and, in doing so, removed the provender from the house. A few days after the family had been occupying the house, the small children, all under the age of twelve years, were playing under the house and found on the sill of the house a tin box filled with dynamite caps. The little child who found the explosive handed the dynamite caps to his sister, the plaintiff, and the plaintiff, in scratching one of the caps with a metallic hair pin, caused it to explode in her hand, and as a result of the explosion she lost one of her hands. The injured child, by her father, instituted this suit for damages. After issue joined, the case was tried on a change of venue to Copiah county. The case was submitted to a jury, who returned a verdict in favor of the plaintiff for five hundred dollars, from which this appeal is prosecuted.

The main contention of appellants is that the trial court erred in permitting the plaintiff to show several alleged acts of negligence on the part of the defendants other than that complained of in the declaration. There was, indeed, a wide latitude given the plaintiff in making out her case, and the court permitted the plaintiff, over objection of defendants to show that sticks of dynamite and dynamite caps were found in front of one Neil Ford's house, stuck in the bank, on the Greensboro Road, some half mile from plaintiff's house; that some dynamite was seen on the Louisville Road where the em-

ployees had camped, about two miles from plaintiff's house; and other evidence of similar nature was permitted to go to the jury. The defendants in rebuttal introduced evidence tending to show that they did not in fact build the Greensboro Road, the Louisville Road, and the Natchez Trace, south. There was ample testimony, however, to the effect that the employees of the defendants did, in fact, store dynamite in the very house into which Johnson with his family moved, the very premises upon which the little girl found the dynamite cap that caused the injury complained of. The plaintiff was required to prove her case largely by circumstantial evidence, and in doing so was permitted to show that the defendants handled large quantities of dynamite all along the highway which they constructed, and upon which plaintiff's house was located. The defendants denied liability altogether. It was the purpose of the plaintiff to show that the box of caps was placed in the vacant house belonging to Mr. Crosby through the human agency of some one, and that the defendants were the responsible parties. The evidenc abundantly justifies the finding of the jury. There was no sufficient showing by the defendants that some other person, either subcontractor or stranger, had anything to do with placing dynamite upon the Crosby premises. If we concede, then, that the evidence assumed too wide a scope, we do not believe the incompetent parts of the testimony did the defendants any substantial harm. The evidence warranted the jury in believing that the defendants handled the explosives in a negligent manner. It appears that on several occasions a wagon loaded with explosives was driven by small negro boys; that on one occasion these explosives were stored for the night in a house near the scene of the accident; on another occasion, that they were stored in a potato house; that a box of dynamite was seen on the gallery of the vacant house; that on still another occasion a box of caps was overturned under the

house and some of them spilled. The witness Leonard Winters testified that the defendants' foreman, who had general supervision of the dynamite, remarked to him about a month before the plaintiff was injured that the defendants might have put a box of caps in the very house in which the plaintiff was injured.

By the first instruction given the plaintiff, the jury were told that persons using a dangerous explosive are required to use "the highest degree of care and caution." The defendants asked that the jury be instructed that they were only required to use "ordinary care." The court, in our judgment, committed no error in stating the degree of care required.

"The degree of care required of persons having the possession and control of dangerous explosives, such as dynamite, is of the highest. The utmost caution must be used to the end that harm may not come to others coming in contact with them." 11 R. C. L. p. 662, par. 14.

It is true the defendants were using the explosives for a useful and legitimate purpose, and that they had done the work in front of the premises where plaintiff was injured some two or three months prior to the date of the injury. It was certainly their duty, however, to take the necessary precautions to prevent injury to others, especially to innocent children, and to this end, remove all unused explosives. The testimony on behalf of the plaintiff shows that they not only deposited explosives without protecting or guarding them, but that they in fact placed explosives in this vacant house, and the necessary inference is that they left explosives in a house which they knew was constructed primarily as a dwelling house. They should have anticipated that the house would be reoccupied by some one, and that explosives left by them in or about a vacant dwelling house would be a dangerous agency capable of producing an injury of the character here complained of. A thoughtful person would naturally anticipate that, if the house was re-

occupied at all, small children would be there present to play in and about the premises and to explore all accessible portions of the house. By the verdict of the jury, appellants are convicted of leaving dangerous explosives on dwelling-house premises over which they had no control.

Complaint is also made of instruction No. 3 given the plaintiff, which reads as follows:

"The court instructs the jury for the plaintiff that, if they believe from the evidence that the defendants negligently left exposed the cap which was found by the Johnson children, the explosion of which resulted in the injury complained of, it is no defense whatever that the house in or about which it was found was unoccupied at the time the cap was left."

Taken and read in connection with the many other instructions given, the granting of instruction No. 3 does not, in our judgment, constitute reversible error. Interpreted literally, this instruction is not correct when it states that the fact that the house was unoccupied at the time the caps were left there "is no defense whatever." The fact that the house was unoccupied is merely a circumstance in the case, a circumstance which the jury should consider in connection with the other evidence. It still remains that appellants were not justified in storing dangerous explosives in the house simply because it was at the time vacant. The instruction contains the essential hypothesis that the jury must "believe from the evidence that the defendants negligently left exposed the cap which was found by the Johnson children," and in all essential features the instruction announced the law correctly. The instructions for the defendant were most liberal, the verdict is most reasonable, and the judgment complained of should be affirmed.

The following authorities support the law as announced by the trial court, and uphold the liability here enforced: *Vills* v. *Cloquet,* 119 Minn. 277, 138 N. W. 33; *Tibbits* v.

*Spokane,* 64 Wash. 570, 117 Pac. 397; *Crabb* v. *Wilkins,* 59 Wash. 302, 109 Pac. 807; *Juntti* v. *Oliver Iron Mining Co.,* 119 Minn. 518, 138 N. W. 673, 42 L. R. A. (N. S.) 840; *Akin* v. *Bradley, etc., Co.,* 48 Wash. 97, 92 Pac. 903, 14 L. R. A. (N. S.) 586; *Nelson* v. *McLellan,* 31 Wash. 208, 71 Pac. 747, 60 L. R. A. 793, 96 Am. St. Rep. 902; *Powers* v. *Harlow,* 53 Mich. 507, 19 N. W. 257, 51 Am. Rep. 154; *Mattson* v. *Minnesota, etc., R. Co.,* 95 Minn. 477, 104 N. W. 443, 70 L. R. A. 503, 111 Am. St. Rep. 483, 5 Ann. Cas. 498.

*Affirmed.*