Hercules Powder Co. v. Wolf *et al.*[*]

(Division A.   Jan. 10, 1927.)

[110 So. 842.   No. 26015.]

1. Explosives. *Persons storing or using explosives in places accessible to children must use corresponding degree of care.*

    Persons storing and using dynamite caps and explosives in places which are accessible to, and naturally attractive to, children, must use a corresponding degree of care to protect children from injury therefrom.

2. Explosives. *Evidence of other acts in leaving dynamite caps held inadmissible.*

    In suit for damages for injuries to infant resulting from explosion of dynamite caps alleged to have been left in accessible place by defendant's servants, evidence of other acts of negligence in leaving unexploded dynamite cartridges in stumps *held* erroneously admitted.

3. Negligence. *Collateral facts are admissible to show defect has continued for sufficient time to charge master with notice, or to show dangerous character.*

    Collateral facts are admissible to show defect, where manner of operation has continued for such length of time that master has

knowledge, or is charged with notice, or to show character or nature of place.

*Corpus Juris-Cyc. References: Explosives, 25CJ, p. 186, n. 60; p. 206, n. 38 New; Negligence, 29Cyc, p. 611, n. 27, 29; p. 612, n. 34. On liability for injury to children from explosives left accessible to them, see annotation in 14 L. R. A. (N. S.) 586; 24 L. R. A. (N. S.) 1257; 42 L. R. A. (N. S.) 840; L. R. A. 1917A, 1295; 11 R. C. L. 664; 2 R. C. L. Supp. 1299; 5 R. C. L. Supp. 614; 6 R. C. L. Supp. 668. As to admissibility of evidence of other explosions to show negligence, see annotation in 32 L. R. A. (N. S.) 1094; 11 R. C. L. 670; 2 R. C. L. Supp. 1302.

Appeal from circuit court of Forrest county.

Hon. R. S. Hall, Judge.

Separate actions by Joseph Wolf, by his father, as next friend, and by Henry Wolf and wife, against the Hercules Powder Company, which actions were tried together by consent. Judgments for plaintiffs, and defendant appeals. Reversed and remanded.

*Hannah & Simrall* and *T. J. Wills* for appellant.

I. Appellant, Hercules Powder Company, was engaged in using the dangerous agency of dynamite. We recognize the rule of law that one using this dangerous agency is held to the highest degree of care. We have no disposition to question the correctness of this principle. This high degree of care is required only as to those to whom a duty is owed.

The appellant owed the appellees no duty and, therefore, there was no negligence and no liability. Granting for the sake of argument that the dynamite caps were found at the place and in the manner claimed by the negro boy, the fact remains that the Hercules Powder Company had a right to leave the caps there and the negro boy had no right to be there or interfere with them.

The principles involved in the "attractive nuisance" and "turntable" cases are the only things that would constitute an exception to the foregoing statement. If the case at bar possessed the elements involved in the "attractive nuisance" and "turntable" cases, then said statement would not be true. But, we submit, that the case at bar does not possess these elements and, therefore, does not fall within the exception, and is subject to the general rule that "a trespasser takes his chance and must look out for himself; and that no duty rests upon the owner to keep his property in such a condition or so guarded that a wrongful intermeddler shall not be exposed to danger." The elements of liability in such cases are set forth in 20 R. C. L., page 83, "Negligence," paragraph 73.

Every one of the elements set forth in Ruling Case Law are absent in the case at bar. And it is not simply a case of the record failing to show the presence of these elements; but the record positively establishes their absence.

If we are correct as to the elements of liability, but mistaken as to their absence from the case at bar, then the case should be reversed and remanded, because of the instructions given for the appellees. We quote Ruling Case Law as our authority for our statement about the elements of liability. The statements in that text are supported by a number of authorities. But these authorities are all from jurisdictions other than Mississippi and we will first consider the decisions of our own supreme court. See *Mackey* v. *City of Vicksburg*, 14 Miss. 777, 2 So. 178; *Spengler* v. *Williams*, 67 Miss. 1, 6 So. 613; *Temple* v. *McComb, etc.*, 89 Miss. 1, 42 So. 874; *Thompson* v. *I. C. R. R. Co.*, 105 Miss. 636, 63 So. 185; *McTige* v. *Johnson*, 114 Miss. 862, 75 So. 600; *Salter* v. *Deweese-Gammill Lbr. Co.*, 137 Miss. 229, 102 So. 268.

The principles that should govern and control the decision of this case have been elaborately and sufficiently

dealt with, we think, in the cases above cited. We submit that the Mackey, the Spengler and the Temple cases have no application to the facts in this case for the very reasons pointed out in the case of *Thompson* v. *I. C. R. R. Co., supra.* The caps that this little negro boy claims to have found were out in the cut-over pine lands something like a mile from where the negro boy lived. According to the testimony offered on behalf of the plaintiff, there was nothing at the place where the caps were found to suggest that the child ever frequented the place or had any occasion to do so. Therefore, in this case, we have a situation where the place itself afforded no attraction for children and the instrumentality that is alleged to have caused the injury was not of that character or nature that children would easily see or be attracted thereby.

In *McTige* v. *Johnson,* the supreme court held the defendant liable because the defendant was charged with notice that the house where the caps were left would again be occupied by a family and that this family would have small children who would naturally play in and about the house. We submit that the reason and the logic announced in that case have no application to the case at bar. On the other hand, we submit that the case at bar falls clearly within the principles announced in *Thompson* v. *I. C. R. R. Co., supra,* and in *Salter* v. *Deweese-Gammill Lbr. Co.*

II. From an analysis of the instructions complained of, the court will observe that appellees disregarded the two elements of the children's going to the place where the caps were found and the appellant having no notice of it. See extended subject note to *Sumner-Cahill* v. *E. B. and A. L. Stone & Co.,* 153 Cal. 571, 96 Pac. 84, 19 L. R. A. (N. S.) 1094, discussing liability under the turntable cases.

III. There is another very sound reason why this case should be reversed and remanded. The appellee sought to recover in this case because the injured boy found a box of dynamite caps in the open woods. The proof shows that the Hercules Powder Company had been dynamiting pine stumps for miles around where these dynamite caps were found. The trial court permitted appellees, over objection of appellant, to introduce a great mass of testimony about unexploded charges of dynamite here, there and yonder in the woods. We submit that this testimony was incompetent on the issues involved, highly prejudicial to the rights of appellant and, therefore, constitutes reversible error.

Appellees are not suing because of charges of dynamite being left in stumps and the testimony is incompetent. It was not negligence for these charges of dynamite to be left in stumps unless the Hercules Powder Company owed some one a duty not to do so. Certainly, this record fails to show any duty to anyone in this respect.

*H. Cassedy Holden,* also for appellant.

The "attractive nuisance" or "turntable" doctrine constitutes a departure from the general rule that a landowner owes no duty to a trespasser except not to willfully and wantonly injure him. Many courts have severely criticized the doctrine as being too broad in its scope, contrary to sound principles of law, and extremely dangerous because of its elasticity and because it makes possible the fixation of liability in very doubtful cases against landowners. There are several states in which the doctrine has been distinctly and unequivocally repudiated. There are other states where it was rejected from the beginning. It is the tendency of practically all the modern decisions to modify the doctrine and to restrict the dangers of injustice lurking in this rule and have therefore taken pains to see that plaintiffs relying upon the rule are held to strict proof of the essential

facts which must appear to make the doctrine applicable. Our own court has shown this attitude of modification and restriction in the two cases of *Thompson* v. *I. C. R. R. Co.* and *Salter* v. *Lumber Co.*, cited in our main brief. This doctrine was first proclaimed in this country in the first of the noted turntable cases styled *Sioux City & P. R. Co.* v. *Stout,* 17 Wall (U. S.) 657, 21 L. Ed. 745. The United States supreme court in later cases has prac-·tically whittled away the rule as laid down in the Stout case. One of the later opinions from that court is *United Zinc & Chemical Co.* v. *VanBritt et al.,* 258 U. S. 268, 66 L. Ed. 615, 42 Sup. Ct. Rep. 299. It was held in this case that the owner of unfenced land, on which within one hundred to one hundred twenty feet of a passing highway there is a pool of water apparently clear and pure but in fact poisonous, is not liable for the death of trespassing children who went into the water and died of the poison, where it is at least doubtful whether the water could be seen from any place where the children lawfully were, and there is nothing to show that the pool was what led them to enter the land, and it does not appear that children were in the habit of going to the place. This opinion is most important here. See, also, *Hayko* v. *Colo. & Utah Coal Co.* (Colo.), 235 Pac. 373, which expressly follows the above case.

It will be noted that the supreme court of the United States says that there must be an attractive nuisance in the form of an instrumentality or place and that the attraction must appear to the child before it becomes a trespasser; that the child must be tempted and allured to become a trespasser. If there is nothing on the premises to draw the child thereto and make it a trespasser, then the landowner has violated no duty because he could not have anticipated that children would come upon the premises and fall into a peril that was wholly hidden to anyone not upon the premises.

And so in the instant case there was nothing to attract children or adults to the spot where the dynamite caps

were found, as testified by the injured boy. The spot was in the open pine woods, well removed from any road. There was no vacant house or pile of lumber or swimming hole, or anything of any character which might be said to attract any person, infant or adult in the slightest degree. The dynamite caps could not have been seen from the road; they could not have been seen by anyone except at a point a few feet away. They could not possibly have attracted boys until they had already become trespassers. This case is plainly distinguishable from *Hamblin* v. *Gano,* 76 So. 633 (Miss.).

In *Birnbaum* v. *R. R. Co.* (Pa.), 94 Atl. 925, the court held there was no negligence where a seven-year-old boy was injured by dynamite caps found on the tracks. Where a boy of six was injured by dynamite caps which he helped take from a box near a stone-crushing plant by prying it open on a day when the plant was idle, the doctrine of attractive nuisance was inapplicable. *Goebenour* v. *Brown* (Kan.), 180 Pac. 776.

No liability arises for injuries to children where the explosives have been guarded with reasonable care or left where there was no reason to anticipate meddling. Alabama: *Chambers* v. *Milner Coal, etc., Co.,* 143 Ala. 255, 39 So. 170; Kentucky: *Stephens* v. *Stephens,* 172 Ky. 780, 189 S. W. 1143; *Miller* v. *Chandler,* 163 Ky. 301, 173 S. W. 779; *Louisville, etc., R. R. Co.* v. *Hart,* 70 S. W. 830, 24 Ky. L. 1123; *Ball* v. *Middlesborough Town, etc., Co.,* 68 S. W. 6, 24 Ky. L. 114; Maine: *Kidder* v. *Sadler,* 117 Me. 194, 103 Atl. 159; Minnesota: *Peterson* v. *Martin,* 38 Minn. 195, 164 N. W. 813; *Dahl* v. *Valley Dredging Co.,* 125 Minn. 90, 95, 145 N. W. 796, 52 L. R. A. (N. S.) 1173; Nebraska: *Slayton* v. *Fremont, etc., R. R. Co.,* 40 Nebr. 840, 59 N. W. 510; Pennsylvania: *Finkbeiner* v. *Solomon* 224 Pa. 333, 74 Atl. 170, 24 L. R. A. (N. S.) 1257; Texas: *Dudley* v. *Hawkins* (Civ. A.), 183 S. W. 776. See, also, *Eaton* v. *Moore,* 111 Va. 400, 69 S. E. 326— actionable negligence in storing dynamite caps obtained by children not shown.

The Hercules Powder Company was not required to anticipate possibilities but only probabilities. See *Hardy* v. *R. R. Co.* (C. C. A.), 266 Fed. 860. This court held the same thing in *Thompson* v. *R. R. Co.*, cited in the main brief for appellant. See 20 R. C. L., 94-95.

The judgment ought to be reversed and the case dismissed under the decision of this court in *Thompson* v. *R. R. Co.* and *Salter* v. *Lumber Co.*, and the decision of the United States supreme court in *United Zinc & Chemical Co.* v. *Van Britt.*

*Anderson & Anderson* and *J. R. Tally,* for appellee.

This box of caps having Hercules Powder Company's name on it and containing one thousand dynamite caps was found by this negro boy within twenty or thirty yards of the road under the end of an old burnt log. The statement of facts leaves only to be determined whether or not under the law the appellant is liable; and if so, the extent of the damage sustained by the appellee in this case.

Appellant's argument is highly technical and without any merit in cases of this kind. We submit that the cases cited in its briefs are not in point on the facts of this case except the one case of *McTighe* v. *Johnson,* 114 Miss. 862, which is dead against the appellant company in this case and is the very case we followed in drawing our declaration and the very one that we followed with our proof.

All of the contention made in appellant's briefs with reference to the appellant's not knowing that this particular negro child would go to this place can be for no purpose but a modern "smoke screen," behind which to try to hide the real issue in this case.

Even after it had been testified by the witness for plaintiff that this consolidated school house was right there within a quarter of a mile of the spot where the caps were left and that more than one hundred children

attended school there, and notwithstanding the fact that appellant put on a great cloud of witnesses, thereafter, including all of the woods superintendents, not one of them stated that they did not know that this school house was right there and that these school children were where they would probably come in contact with these dangerous explosives, sowed down on the ground like "dragon's teeth" by this careless, negligent and reckless bunch of agents, servants and employees of appellant.

Counsel for appellant contend in their briefs that this was out in the open cut-over pine woods, but can it be said that they were exercising any sort of care and caution not to observe a great big consolidated brick school building, standing in close proximity to the point where the caps were left, a school with more than a hundred children in attendance? *McTighe* v. *Johnson,* 114 Miss. 867, controls here.

Argued orally by *T. C. Hannah* and *H. C. Holden,* for appellant, and *John R. Tally* and *Cephas Anderson,* for appellee.

SMITH, C. J., delivered the opinion of the court.

The Hercules Powder Company was engaged in blasting stumps from a considerable area of cutover land, in Forrest county, with the consent of the owner of the land. It used for this purpose dynamite cartridges that were fired by means of a dynamite cap. Joseph Wolf, a small boy, went on a portion of this land in search of a cow belonging to his father, found a box of these dynamite caps, which the jury were warranted by the evidence in believing had been left there by the powder company's servants, and, while playing with one of the caps, it exploded and injured his hand. He sued the powder company, by his father as next friend, for the damages thereby sustained by him, and his father and

mother also sued the company for the damages they also sustained thereby.

These cases, by consent, were tried together, before the same jury, and there was a verdict and judgment in each for the plaintiff, from which the powder company has brought the case to this court. The errors assigned are the refusal of the court below to grant the powder company a peremptory instruction, the granting of several instructions for the plaintiffs, and the admission of certain evidence introduced by the plaintiffs.

The substantial facts are about as follows:

The land, the area of which was quite large, was uninclosed, and persons and cattle were accustomed to roam at large thereon. The place at which these caps were found was within a few yards of a public road, and a very short distance from a public school. The cow owned by Joseph Wolf's father was accustomed to graze over the portion of the land in the vicinity of the place where the caps were found, and on several occasions he (Joseph Wolf) had been sent by his father to drive her back home. He was engaged in looking for this cow at the time he found the box of caps.

Over the objection of the appellant, the plaintiffs were permitted to introduce evidence that the dynamite cartridges had been left by the appellant's servants unexploded in stumps on other portions of the land, and that dynamite caps left by its servants had also been found on other portions of the land.

The place where these caps were found was readily accessible to, and the jury were warranted in finding would probably be visited by, children, which latter fact the servants of the appellant should have reasonably anticipated, and, since dynamite caps and explosives generally are naturally attractive to children, the rule is that persons storing or using them in such places must use a corresponding degree of care to protect children from injury therefrom (*Hamblin* v. *Gano* [Miss.], 76 So. 633; *McTighe* v. *Johnson*, 114 Miss. 862, 75 So. 600; 25

C. J. 186), from which it follows that the peremptory instruction requested by the appellant was properly refused.

Several of the appellees' instructions to the jury charged the jury to find for them, in event the caps were negligently left by the appellant's servants at the place they were found, and none of the appellees' instructions defined negligence or advised the jury from what circumstances it could be inferred. Assuming, but only for the purpose of the argument, that these instructions were defective in that respect, any error therein was cured by the instructions granted for the appellant. One of the appellees' instructions, however, omitted any reference to negligence, but charged the jury, in effect, to find for the plaintiff in event the caps were left on the land by the appellant's servants, were found by Joseph Wolf, and that he was injured while playing therewith. This instruction, of course, should not have been granted, but we are not called on to decide whether the error therein was cured by the appellant's instructions, for the reason that the case must be reversed on another ground.

The evidence of the other acts of negligence similar to the one here in question, and hereinbefore referred to, on the part of the appellant's servants, should not have been admitted. 29 Cyc. 611; *Mississippi Central R. R. Co.* v. *Samuel Miller,* 40 Miss. 45; *Southern Railroad Company* v. *Kendrick,* 40 Miss. 374, 90 Am. Dec. 332. "The tendency of such evidence was to confuse and mislead the jury, and to prejudice the" appellant (*Tribette* v. *Railroad Co.,* 71 Miss. 212, 13 So. 899), and related to "collateral facts, which furnished no legal presumption as to the principle facts in dispute, and which the defendants were not bound to be prepared to meet" *Collins* v. *Inhabitants of Dorchester,* 6 Cush. [Mass.] 396.

There are two exceptions to this rule of nonadmissibility of evidence of collateral facts. They are set forth

in *Kress* v. *Markline,* 117 Miss. 37, 77 So. 858, Ann. Cas. 1918E, 310, as follows:

"One is to show that the defect or manner of operation has continued for such a length of time that the master has knowledge or is charged with notice of the defect or negligent manner of operation. The other ground of admissibility is to show the dangerous character or nature of the place."

Here knowledge by the master of the manner in which its servants were using the dynamite caps is of no consequence; and the dangerous character of such caps was not only not shown by the collateral evidence here introduced, but was a fact not necessary to be proven.

*Reversed and remanded.*