SHEMPER *v.* CLEVELAND.

In Banc. Oct. 1, 1951.

No. 37920 (54 So. (2d) 215)

**On Suggestion of Error.**

114

The original opinion was as follows:

**Kyle, J.**

Appellee, Richard Cleveland, a minor, a plaintiff in the court below, who appeared and sued by his father as next friend, recovered a judgment against the appellant, Ben Shemper, doing business under the trade name of Shemper & Company, defendant in the court below, for damages for personal injuries sustained by the appellee as a result of the explosion of a 40-millimeter antiaircraft shell found on or adjacent to the appellant's junk yard in the city of Hattiesburg, and from that judgment the appellant prosecutes this appeal.

The appellant was engaged in the business of buying and selling scrap iron, hides, brass, wire, used automobile parts, parts of airplanes and other junk in the city of Hattiesburg, and owned a large junk yard, where great quantities of junk were unloaded from trucks and stored and later reloaded upon railroad cars for shipment to distant points in the regular course of business. The junk yard extended from Jackson Street in the city of Hattiesburg in a northeasterly direction along East Fifth Street, a distance of approximately one block. There was a wire fence along the appellant's property line running parallel with Fifth Street, but according to the testimony in the record the appellant had permitted the fence to fall into a state of dilapidation and disrepair, and appellant had permitted junk to be piled on top of the fence and to overflow into the right-of-way of the street, not

including, however, the travelled portion of the street, and the fence in many places had been mashed to the ground. The junk yard had been maintained in this condition for a period of several years.

On the morning of September 17, 1949, the appellee, a boy of the age of 13½ years, who had a hobby for building small airplanes, rode his bicycle to the junk yard for the purpose of inspecting some airplane parts which he had seen piled on the junk yard near the Fifth Street right-of-way, and while he was on this mission he picked up two shells near the entrance to the junk yard, one of which was a live shell and was later identified as a 40-millimeter anti-aircraft shell, and took them to his home, a distance of about eight blocks from the junk pile. The shells were about four inches long and between one and two inches in diameter. That afternoon about 5:00 o'clock, while the appellee was playing with one of the shells in a neighbor's back yard near his home he threw the shell about six feet and when it struck the ground it exploded. The appellee was knocked to the ground and was seriously injured by the explosion. Fragments of metal or other substances which were released from the shell by the explosion were embedded in the appellee's face, arms and body, and appellee's left thumb was badly lacerated. His eyes were seriously affected by the particles of foreign matter which were thrown into his eyes when the shell exploded, and the upper part of appellee's body was peppered with fragments of the exploded shell, some of which were still embedded in appellee's face and other parts of appellee's body at the time of the trial. In addition to the above mentioned physical injuries the appellee also suffered severe nervous shock, and for several weeks after the accident appellee suffered from severe headaches and dizziness.

The appellee testified that he visited the junk yard on the day hereinabove mentioned for the purpose of looking at an old airplane body that he had seen on the junk pile; that he was especially interested in looking at some

airplane parts, which he hoped to get his daddy to buy for him, and which he proposed to use in trying to make an airplane for himself; that when he arrived at the junk yard his attention was attracted to piles of small bombs or shells which he saw scattered around on the ground on the outside of the fence and near the edge of the junk pile; that there were probably 50 or 75 shells scattered around in small heaps; and that he picked up two of them. The appellee stated that the shells were on the outside of the fence, about five or six feet from the fence posts, and that he saw outside the fence parts of airplane wings, stoves, stovepipes and wire. The appellee stated that he had been by the junk yard about ten times before.

E. C. Harris, Chief of Police of the City of Hattiesburg, made an investigation at the site where the shells were found a day or two after the appellee was injured and found shells on the ground near the junk yard fence. The shells were about 4 inches long and about one inch in diameter, and were partially buried, as if they had been stepped on. The shells were "laying on the ground", and he did not have to dig into the junk pile to find them.

The proof showed that the appellant had purchased during the year 1948 quantities of steel shrapnel at Camp Shelby, which had been brought to the junk yard from the rifle range at Camp Shelby in trucks. The appellant sometime prior to the purchase of the shrapnel had been notified by the United States government that a crew of men would be sent to the rifle range to examine the grounds and to search for and find and bury all live or explosive shells; and appellant had been notified not to buy any of those shells, but had been advised that it would be all right to buy shrapnel. Appellant testified that "it was shrapnel we were buying at the time these shells may have come to our property." Appellant also testified that he did not knowingly buy any shells, and that he hired a man to stay out on the yard and inspect the trucks in which the shrapnel was delivered, and that he issued instructions that "if he found any shells or

anything of that nature, to leave them on the trucks.'' Appellant testified that he did not know there were any shells on Fifth Street between the fence and the street, or between the street and the row of posts where the appellee said he found the shells which he carried home with him.

Mike Costin, who had been employed by the appellant as a watchman to inspect the trucks which were used in hauling shrapnel to the yard, testified that he worked for the appellant during the month of March and a part of the month of April 1948, and that his instructions were that he should not permit the unloading of shells on the junk yard; that he carried out these orders as far as possible; that he never consented to the unloading of shells on the yard; that he worked for the appellant several weeks; and that he thought that during that time he practically broke the truck drivers from bringing such shells into the yard. Costin stated that he left Hatties-burg during the month of April, and that he did not know what happened after he left.

The appellee's cause of action was based upon the theory that the appellant's junk yard, maintained as it was, with its scrap iron, automobile parts, airplane parts, anti-aircraft shells and other kinds of junk, stacked on the yard in the heart of the city and extending alongside and over into the public street, was attractive to children, and that appellee drawn by such attraction stopped at the junk yard for the purpose of examining the airplane parts and other junk on or near the right-of-way of the street, and while so doing picked up the 40-millimeter anti-aircraft shells lying on the ground within the right-of-way of the street, without knowing that they were highly dangerous explosives, and carried them home to play with; that the appellant had permitted the mass of junk, which included shells, to be piled over the fence line of his premises into the right-of-way of the street, where the shells and other junk were easily accessible to the general public and especially to the appellee; that the

appellant knew that the shells were dangerous, and that he failed to exercise reasonable care to prevent the shells from being left on the yard; that the appellant was negligent in permitting the shells to be deposited along the edge of the junk pile and in failing to remove them; and that the appellant's negligence was the proximate cause of appellee's injuries.

The appellant's defense was based upon the theory that the appellee was a trespasser, and that if appellee realized that the shells did not belong to him and that in taking them he was doing wrong, the appellee was not entitled to recover. That contention was maintained throughout in the cross-examination of the appellee's witnesses and in the instructions which appellant requested and which the court refused to grant.

It is not necessary that we discuss at length the attractive nuisance doctrine in passing upon the questions presented on this appeal. That doctrine, as stated by our own court in the case of Lucas v. Hammond, 150 Miss. 369, 116 So. 536, 537, 60 A. L. R 1427, is that "'One who maintains dangerous instrumentalities or appliances on his premises easily accessible to children and of a character likely to attract them in play, or permits dangerous conditions to remain thereon with the knowledge that children are in the habit of resorting thereto for amusement.'—and who failed to exercise ordinary care to prevent children from playing therewith or resorting thereto, is liable to a child non sui juris who is injured thereby, and who did not know and appreciate the danger incurred by him in playing with the instrumentality or in the vicinity of the dangerous condition, or was too young to be charged with such knowledge." 20 R. C. L Sec. 71, p. 80, and Sec. 78, p. 88; Mackey v. City of Vicksburg, 64 Miss. 777, 2 So. 178; City of Vicksburg v. McLain, 67 Miss. 4, 6 So. 774; McComb City v. Hayman, 124 Miss. 525, 87 So. 11; Salter v. Deweese-Gammill Lumber Company, 137 Miss. 229, 102 So. 268; Lucas v. Hammond, 150 Miss. 369, 116 So. 536, 60 A. L. R. 1427; Vincent et al. v.

Barnhill et al., 203 Miss. 740, 34 So. (2d) 363. Nor is it necessary that we discuss the difference between the liability of a defendant in a case of this kind to a technical trespasser and the liability of a defendant in a case of this kind to a technical licensee. When the appellee picked up the shells, they were lying near the fence in the street right-of-way.

The appellee according to the testimony was a boy 13½ years of age. The junk yard, because of its location, the variety of articles to be found thereon, and the mass of automobile, airplane and other machine parts was an attractive place for boys of that age. The appellee himself was attracted to the place because of the presence on the junk yard of airplane parts which were a part of the mass of junk stored on the yard. The appellant could have reasonably anticipated that boys of that age would be attracted to the junk yard and were likely to visit the junk yard, being prompted to do so by curiosity or a desire to play.

The appellant knew that shells of the kind that appellee came in contact with had been brought to his junk yard, and orders had been given to Costin several months before to see that such shells were not unloaded on the yard. Costin said, "I carried those orders out as far as possible." But Costin worked for appellant only a few weeks and at the time he quit work he said he thought that he "had practically broke them from bringing them in there." We think that it was the duty of the appellant to keep his junk yard free and clear of the dangerous explosives which might be brought to the junk yard by persons hauling shrapnel and other junk and depositing the same on the junk yard, for the reason that the appellant should have realized that such dangerous explosives remaining undisposed of on his premises were apt to be picked up by persons entering upon the premises for lawful purposes, or by children having access to the premises and attracted thereby. The question whether the appellant exercised reasonable care to prevent such

shells from being left on his premises, and the question whether the appellant was guilty of negligence in permitting the dangerous explosives to remain undisposed of on his premises, and the question whether appellant's negligence was the proximate cause of appellee's injury were questions which were properly left to the jury for determination. We think that the jury was justified in finding that appellant was guilty of negligence and that such negligence was the proximate cause of appellee's injuries. As stated by Murrah, Circuit Judge in his dissenting opinion in the case of Schmidt v. United States, 10 Cir., 179 F. (2d) 724, 729, if law is experience as recorded by adjudicated cases, it teaches us that the result of leaving such explosive shells in an unguarded place, where they are apt to be picked up by the curious and unsuspecting, is not improbable but commonplace. Things that are commonplace are certainly within the range of apprehension.

In the case of Hercules Powder Company v. Wolf et al., 145 Miss. 388, 110 So. 842, 843, this Court said: "The place where these caps were found was readily accessible to, and the jury were warranted in finding would probably be visited by, children, which latter fact the servants of the appellant should have reasonably anticipated, and, since dynamite caps and explosives generally are naturally attractive to children, the rule is that persons storing or using them in such places must use a corresponding degree of care to protect children from injury therefrom (Hamblin v. Gano. (Miss.) 76 So. 633, McTighe [Hughey & McTighe] v. Johnson, 114 Miss. 862, 75 So. 600; 25 C. J. 186), from which it follows that the peremptory instruction requested by the appellant was properly refused."

In the case of McTighe, etc. v. Johnson, 114 Miss. 862, 75 So. 600, the Court held that the degree of care required of persons having the possession and control of dangerous explosives, such as dynamite, is of the highest, and that the utmost caution must be used to the end

that harm may not come to others coming in contact with them, and that parties leaving dynamite unguarded in a vacant dwelling house should anticipate that the house would be reoccupied by someone, and if reoccupied, that small children would be there to play in and about the premises; and the Court held in that case that the fact that the house in or about which the dynamite cap was found was unoccupied at the time the cap was left was no defense to the plaintiff's action.

In the case of Little v. James McCord Company, Tex. Civ. App., 151 S. W. 835, cited in Annotation: Ann. Cas. 1917B, 345, the court held that where the owner of a magazine in which fireworks, dynamite caps, and other explosives were stored took therefrom a quantity of explosives and deposited the same on an open lot in a pecan grove near a public highway which possessed peculiar attractions to children and which was a place to which they were accustomed to resort, the owner of the magazine was liable for damages to a 12-year old boy who was attracted to the place where the explosives had been left scattered on the ground, and was prompted by his childish impulses to appropriate some of them, and who in attempting to break one of the pieces on a rock caused the same to explode with great violence and blow off his hand.

In 22 Am. Jur., p. 142, it is said that "if persons leave exposed to the observation of children anything which would be tempting to them and which they in their immature judgment might naturally suppose they were at liberty to handle or play with, such persons should expect that liberty to be taken. The cases generally hold such initial negligence to be the proximate and therefore the responsible cause of injuries resulting to children from dangerous explosives found on an owner's premises."

In the case of Eastburn v. Levin, 72 App. D. C. 190, 113 F. (2d) 176, the court had under consideration a case in which an 8-year old boy had sued for injuries received

by him in the defendant's junk yard. On the day of the accident the plaintiff and the other boys entered the yard from the street, at a place where boards were missing, to play and to get automobile cloth for a hut. The plaintiff saw torn cloth on a car which lay on its side on top of the gasoline tank. He climbed on the car and the car tilted and threw him against broken glass. The trial court directed the jury to return a verdict for the defendant. The United States Court of Appeals for the District of Columbia reversed the case, and held that the jury should have been permitted to decide whether the special circumstances on which the court relied in the Best case, Best, Adm'r v. District of Columbia, 291 U. S. 411, 54 S. Ct. 487, 78 L. Ed. 882—attraction, danger not apparent to children and likelihood of visits of children—were present, and if so, whether the defendant took reasonable precaution for the protection of children.

We think that the case was properly submitted to the jury on instructions, which, when taken as a whole fairly stated the law, and that there is no reversible error in the record.

The appellant contends that the verdict is excessive, that the amount of the verdict shows that it is the result of passion and prejudice, and that the verdict should be set aside. We have carefully examined the testimony relating to the injuries sustained by the appellee. They were both serious and painful; the nervous shock received by the appellee was very great; and the proof is not clear that some of the injuries may not be permanent. In view of these facts we are unwilling to undertake to substitute our judgment as to the amount of the damages which appellee should receive for the judgment of the jury.

The judgment of the circuit court is therefore affirmed.

Affirmed.

ON SUGGESTION OF ERROR

**T. J. Wills** with **Barnett, Jones & Montgomery,** for appellant.

J. T. Wills with J. E. Franklin, also for appellant.

Homer **W. Pittman** and **Joe R. King**, for appellee.

Quitman Ross, also for appellee.

McGehee, C. J.

On April 16, 1951, we affirmed a judgment for $10,000 in favor of the appellee herein, Richard Cleveland, a minor, for damages sustained by him because of the explosion of a forty millimeter anti-aircraft shell which he picked up on the unused portion of a public street adjacent to the junk yard of the appellant, Shemper &

Company, at Hattiesburg, Mississippi, and the presence of which anti-aircraft shell, along with numerous others, were on the street right of way due to the negligence of said operator of the junk yard.

On May 16, 1951, this Suggestion of Error was filed, and after a consideration of the briefs filed in support thereof, we concluded to call for reply briefs thereto under a memorandum mailed to the attorneys for the appellee on July 10, 1951, to be directed in particular (1) to the question of whether or not it was error for the trial court to have submitted the Attractive Nuisance Doctrine to the jury, together with the issue of whether or not the appellant was guilty of actionable negligence as a tort feasor in allowing these dangerous explosives to be thrown into the unused portion of the public street adjacent to the junk yard, where, according to the proof, children had been accustomed to play; and (2) whether or not, assuming that it was error to submit to the jury the issue of liability on the theory of the Attractive Nuisance Doctrine, it was prejudicial to such an extent as to have affected the result of the trial.

. We are indebted to the several attorneys of the respective parties for the very helpful and exhaustive briefs that have been submitted on these and other phases of the case.

A majority of the Judges are of the opinion that the Attractive Nuisance Doctrine is inapplicable to the case for the reason that the plaintiff, a boy thirteen years of age, did not go upon the premises of the defendant in finding and picking up the loaded shell on the street right of way but was merely attracted to a point nearby the property. line by some aeroplane parts which he desired to look at for the purpose of ascertaining whether or not he would desire to purchase the same for use in making a miniature aeroplane, and when he reached a point near enough to look at the aeroplane parts he found several little piles of these discarded anti-aircraft loaded shells on the street right of way, and for the

presence of which shells, the jury was warranted in concluding, from the preponderance of the evidence, that the defendant was responsible. We all agree that ██ the plaintiff not being on the premises of the defendant, either as a trespasser or otherwise, at the time he found and picked up the shell, which later exploded when he threw it to the ground, the rule which makes a defendant liable to a trespasser only for willfully or wantonly injuring him, or proximately causing him to be injured, is not applicable under the facts of this case.

██ All of the Judges likewise agree that the jury was warranted in finding from the overwhelming weight of the evidence that the defendant was guilty of actionable negligence in allowing these loaded shells to become placed and to remain on the street right of way. And the declaration contained an allegation of common law negligence, aside from the allegation that the plaintiff was attracted to the junk yard by the aeroplane parts, etc. The issue as to whether or not the defendant was guilty of common law negligence, and of being a tort feasor under all of the facts in the case, was submitted to the jury under proper instructions, and since such issue was so thoroughly established by the overwhelming weight of the evidence, we have concluded that the submission of the further issue as to whether the defendant was also liable under the Attractive Nuisance Doctrine did not prejudice the rights of the defendant to such an extent as it could reasonably be said that the submission of such issue to the jury under the instructions had the effect of producing a different result than would have been reached if the issue of liability on the theory of common law negligence alone had been submitted under the principle announced in the cases of Hercules Powder Company v. Wolf, 145 Miss. 388, 110 So. 842; McTighe, Hughey & McTighe v. Johnson, 114 Miss. 862, 75 So. 600; 25 C. J. 186; 35 C. J. S., Explosives, Sec. 5, and other authorities.

It should be observed that the authorities are somewhat in conflict as to whether or not an injured plaintiff must have been attracted to a place in question by the instrumentality by reason of which he sustained his injury; and that the trend of the decisions in this Court has been rather to limit than to extend the Attractive Nuisance Doctrine. ▉ ▉ And we are unable to agree with the argument on behalf of the appellant that the plaintiff should be denied a recovery in this case on the ground that he was either a trespasser on the premises of the defendant, or was guilty of a willful wrong in removing the shell from the pace on the right of way where it was found and in taking it to his home. The plaintiff was entitled to assume that these shells had been thrown onto the right of way and abandoned by their owner, and was not guilty of any willful wrong or criminal offense in picking up the shells on the street and carrying them away.

▉ ▉ Finally, it should be said that the operator of the junk yard admitted that he knew that these shells were dangerous and the proof shows that up until the month of May prior to the plaintiff's injury in September he had an employee whose duty it was to see to it that these shells which were brought along with other junk from Camp Shelby were done away with, and the jury was entitled to find from the evidence that the defendant was negligent in not continuing the practice of seeing to it that these shells were not left exposed, either on his premises or in close proximity thereto, through any fault of his own.

For the reasons hereinbefore set forth, we have concluded that the Court should adhere to the former decision rendered herein, and that the Suggestion of Error should therefore be overruled.

Suggestion of error overruled.