**W. L. COLEMAN et al., Plaintiffs-Appellants,**

v.

**ASSOCIATED PIPELINE CONTRACTORS, INC., Defendant-Appellee.**

**No. 30834.**

United States Court of Appeals, Fifth Circuit.

June 18, 1971.

---

William F. Coleman, Francis S. Bowling, Overstreet & Kuykendall, John M. Kuykendall, Jr., Bowling, Coleman & Cothren, Jackson, Miss., for plaintiffs-appellants.

Hassell H. Whitworth, Elizabeth W. Grayson, Jackson, Miss., for defendant-appellee, Watkins & Eager, Jackson, Miss., of counsel.

Before O'SULLIVAN *, THORNBERRY and DYER, Circuit Judges.

DYER, Circuit Judge:

In this tort action based on the allegedly wrongful death of a seven-year-old girl, the Colemans appeal from the District Court's directed verdict for Associated Pipeline Contractors, Inc. Applying Mississippi law, the court held that because decedent was a trespasser, or at most a gratuitous licensee, the contractor's sole duty was to refrain from willful or wanton injury. The court determined that the embankment where the accident occurred could not be considered an attractive nuisance under precedents set by the Mississippi courts. The District Judge found that the embankment became hazardous only after decedent and other children had dug into it. Consequently, he concluded, Associated did not breach any duty owed the child, under either common law negligence principles or the Restatement of Torts, Second, § 339.[1] We affirm.

Associated had been engaged in clearing a pipeline right-of-way at the time of the accident. Part of this pipeline was to be laid across farmland owned by Homer Carver in Holcomb, Mississippi. Carver had granted an easement for pipeline work; in fact, two pipelines had already been constructed on his property.

Evidently on Sunday, a few days before the accident, Associated's bulldozers

---

* Senior Circuit Judge, 6th Circuit, sitting by designation.

1. Restatement of Torts, Second, § 339, provides:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of alienating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

entered the Carver premises to grade a new right-of-way, south of those existing, for the future laying of the third pipeline. In clearing the area, the bulldozers cut through existing hills and banks, whenever necessary, on either side of the right-of-way. That same afternoon the Associated crew completed their grading work on the Carver property.

On Tuesday, May 20, Ida Darleen Coleman began playing with her brothers on the pipeline construction site located on Carver's premises. Carver had never objected to the children's use of his farmland as a playground. Indeed, his relationship with the Colemans, whose home adjoined the property, appears to have been most cordial.

With her brothers Ida began digging a small hole near the bottom of a vertical embankment cut by the bulldozers. Composed of clay, rock, and sand strata —a mixture ostensibly more susceptible to cave-ins than an impacted soil composition, the embankment was between eight and twelve feet high. Although the contractor could have bulldozed it to produce a more gradual slope, Associated had not done so. A clump of trees concealed the embankment from the view of the Coleman home.

Eventually the children were able to dig a cave large enough for Sammie, the younger brother, to enter. While engaged in this project, however, the children heard a noise; and, looking up, they saw dirt falling. Woodie, the oldest, yelled that they should all run. The other children apparently heeded his command, but Ida did not escape. Trapped under the falling rock and earth, she smothered before help arrived. At the time this tragic accident occurred, no Associated workman remained on the premises. Moreover, the evidence—even Carver's testimony—does not disclose that any employee or representative of Associated knew, or should have known, that children were playing near the recently cut embankment. Undisputably no one had given them permission to play on the right-of-way.

That bulldozer operators may have spoken with children watching the grading work does not establish the inference that these workmen knew that children would, or that they had given the children permission to, use the premises for play. Furthermore, that these operators may have observed children playing in an adjoining yard does not induce an inference that these workers knew children would play on the right-of-way.

Challenging the District Court's judgment, the Colemans propound three principal arguments: they contend that whether the contractor rightfully occupied the premises where the accident occurred, whether decedent was a trespasser or licensee, and whether the embankment constituted an attractive nuisance were factual issues determinable by the jury. Under Boeing Co. v. Shipman, 5 Cir. 1969, 411 F.2d 365, they argue, the court erred in directing a verdict, since substantial evidence opposed Associated's motion. In other words, they argue that there was enough "conflict in substantial evidence to create a jury question." *Id.* at 375.

■ Necessarily antecedent, however, to any evaluation of the factual evidence presented by the Colemans is a determination of the legal duty owed by Associated to Ida Darleen. Obviously, in this *Erie* controversy, Mississippi law should be dispositive of the issue.

■ Ordinarily the owner or occupant of land or premises owes no duty to a licensee, or trespasser, entering the premises, except to refrain from willful or wanton injury. Bishop v. Stewart, 1958, 234 Miss. 409, 106 So.2d 899, 900; Kelley v. Sportsmen's Speedway, Inc., 1955, 224 Miss. 632, 80 So.2d 785, 792–793; *accord*, Stapleton v. Louisville & Nashville R. R., 5 Cir. 1959, 265 F.2d 738, 747; West v. Williams, Miss.1971, 245 So.2d 591; Langford v. Mecurio, 1966, 254 Miss. 788, 183 So.2d 150, 154. To be willful or wanton, "[s]omething more is required than mere inadvertence or lack of attention. There must be a more or less extreme departure from or-

dinary standards of care. The conduct must differ in quality, as well as in degree, from ordinary negligence, and must involve a conscious disregard of a known, serious danger." Dry v. Ford, 1960, 238 Miss. 98, 117 So.2d 456, 458.

Clearly the District Judge's conclusion that Ida Darleen's death was not the result of willful or wanton conduct is correct. Thus the Colemans here have attempted to show that the facts justify an exception to, or deviation from, the general rule. The Colemans' argument rests on two grounds. First, they now contend that Associated had no right to occupy the property where the embankment was situated. Ostensibly they base this contention on the proposition that Associated transgressed the boundaries set in its contract with Columbia Gulf, the pipeline easement holder, and was therefore a trespasser on Carver's property. Under these circumstances they conclude that the willful-or-wanton rule is inapplicable. This argument lacks merit. In light of the easement and the contract, even assuming that Associated exceeded the contractual limits for width of the right-of-way, it is clear that Associated did not thereby become a trespasser on Carver's land. Carver's easement specified no boundaries for the right-of-way; it merely established Columbia Gulf's monetary liability for land used. While Associated *might* be liable to Columbia Gulf for making the right-of-way too wide and Columbia Gulf *might* be liable to Carver for clearing the land, Associated does not thereby lose its right to occupy the premises. *See* Aaron v. Florida Gas Transmission Co., 5 Cir. 1969, 412 F.2d 802; Baker v. Columbia Gulf Transmission Co., Miss.1969, 218 So.2d 39, 43. Associated would be responsible to Columbia Gulf, not to Carver or the Colemans. Moreover, the Colemans' questions with regard to Associated's status as rightful occupant of the premises are untimely. The record discloses that they neither presented allegations nor produced evidence to substantiate their position at the trial level. Consequently this Court will not indulge in *de novo* consideration of Associated's status. *See, e. g.,* United States v. United Services Automobile Association, 5 Cir. 1970, 431 F.2d 735, 737, cert. denied, 1971, 400 U.S. 992, 91 S.Ct. 459, 27 L. Ed.2d 440; Laguna Royalty Co. v. Marsh, 5 Cir. 1965, 350 F.2d 817, 825 826; Mondshine v. Short, 5 Cir. 1952, 196 F.2d 606, 608.

Second, the Colemans suggest that the embankment was an attractive nuisance. Under Mississippi precedents and the Restatement of Torts, Second, § 339, they argue that Associated's duty to the children was an obligation to exercise reasonable care, not merely to refrain from willful or wanton injury. Superficially Mayor of Vicksburg v. McLain, 1889, 67 Miss. 4, 6 So. 774, 775, supports this contention. Nevertheless, several important factors distinguish that case from the factual situation *sub judice: i. e.,* the *McLain* court emphasized that the embankment was adjacent to a school yard and that defendant had "carelessly and negligently permitted it to stand unsupported and unprotected against falling for a long time, well knowing that the school-children were in the habit of playing at and about the foot of this hill or bluff." *Id.* at 775. Contemporaneous decisions, relying on similar special circumstances, lent weight to the *McLain* implication that an embankment can be an attractive nuisance. *See* Spengler v. Williams, 1889, 67 Miss. 1, 6 So. 613; Mackey v. Mayor of Vicksburg, 1887, 64 Miss. 777, 2 So. 178. Certainly, however, any effort to project these pronouncements into a twentieth-century general rule applicable to all embankments in Mississippi must fail. During this century the Mississippi supreme court has often reiterated its determination to compress, rather than expand, the attractive nuisance doctrine's sphere of applicability. *E. g.,* Gordon v. C. H. C. Corp., Miss. 1970, 236 So.2d 733; McGill v. City of Laurel, 1965, 252 Miss. 740, 173 So.2d 892, 903; Vincent v. Barnhill, 1948, 203 Miss. 740, 34 So.2d 363, 365; Lucas v.

Hammond, 1928, 150 Miss. 369, 116 So. 536, 537. Absent special circumstances, the court has confined the doctrine to those inherently dangerous instrumentalities—such as turntables, explosives, or electrical conduits—which are wholly outside the natural order. *See* Shemper v. Cleveland, 1951, 51 So.2d 770, 773, suggestion of error overruled, 212 Miss. 113, 54 So.2d 215; Hamblin v. Gano, Miss.1918, 76 So. 633, 634; McTighe v. Johnson, 1917, 114 Miss. 862, 75 So. 600; Dampf v. Yazoo & M. V. R. R., 1909, 95 Miss. 85, 48 So. 612; Temple v. McComb City Electric Light & Power Co., 1907, 89 Miss. 1, 42 So. 874. In such situations the landowner incurs a duty of ordinary care, unless the child comprehends the danger. *See, e. g.*, Lucas v. Hammond, *supra*, 116 So. at 537; Salter v. DeWeese-Gammill Lumber Co., 1924, 137 Miss. 229, 102 So. 268, 270. Man-made duplications of natural or familiar conditions—such as lakes, swimming pools, or buildings—are ordinarily beyond the pale of the doctrine. *See* Gordon v. C. H. C. Corp., *supra*; McGill v. City of Laurel, *supra*, 173 So.2d at 903; Bonhomie & H. S. Ry. v. Hinton, 1929, 155 Miss. 173, 124 So. 271; Thompson v. Illinois Central R. R., 1913, 105 Miss. 636, 63 So. 185, 186. Examining the Restatement in this context, the supreme court has said:

It is clear from the foregoing cases that under the law of this state the attractive nuisance doctrine does not extend to swimming pools. However, counsel for appellant urges that the Court should reexamine this holding in light of Section 339, Restatement of the law of Torts (2d 1965). This section deals with conditions highly dangerous to trespassing children. In the discussion of this section it is pointed out that there are many dangers such as those of fire and water or falling from a height, which under ordinary conditions may be reasonably expected to be fully understood and appreciated by any child old enough to be allowed at large. To such conditions the provisions of Section 339,

*supra*, are not applicable in the absence of other factors creating a special risk, such as the fact that the condition is so hidden that its danger is not readily visible or some distractive influence which makes it likely that a child will not discover or appreciate it. The proof in this case shows that Franklin Gordon was an intelligent boy, having completed the fourth grade in school. Certainly he was not too young to appreciate the danger of water. There was nothing hidden or concealed about the danger involved in this case. Although the swimming pool was attractive, it was no more dangerous than any other artificial body of impounded water of the same depth. The facts of this case do not bring it within the provisions of Section 339, *supra*.

Regrettable as it is that the ten year old boy lost his life, we are unable to find any facts in this case which would justify us to depart from the long established rule that water hazards are not attractive nuisances. Gordon v. C. H. C. Corp., *supra*, 236 So. 2d at 735–736.

If analogies must be drawn, the proper direction is clear. The embankment where Ida Darleen met tragic death has much more in common with natural hazards—such as cliffs and bluffs—than with manifestly artificial conditions—such as explosives or turntables. Under ordinary conditions, any child old enough to be allowed at large may be reasonably expected to have understood and appreciated its dangers. *See* Restatement of Torts, Second, § 339, Comment j. To categorize this embankment as an attractive nuisance would contravene the reasoning and policy espoused by the Mississippi courts. In this *Erie* context, we shall not presume to do so.

Since Associated was not a trespasser and the embankment was not an attractive nuisance, the contractor's legal duty to Ida Darleen Coleman could only be to refrain from willful or wanton injury. Surely there are no other special circumstances increasing the duty owed, or

precluding application of the general rule here. *Compare* Marlon Investment Co. v. Conner, 1963, 246 Miss. 343, 149 So.2d 312, 315–318, *and* Mayor of Vicksburg v. McLain, *supra, with* Graves v. Massey, 1956, 227 Miss. 848, 87 So.2d 270, 271, *and* Sears, Roebuck & Co. v. Tisdale, Miss.1966, 185 So.2d 916. *See also* Lepnick v. Gaddis, 1894, 72 Miss. 200, 16 So. 213. As we have intimated, once the legal question regarding the duty of a lawful occupier of premises to trespassers and licensees has been determined, the occupier's liability must depend on the facts found in each case. Normally the issue should be submitted to the jury. Nevertheless, having considered all the evidence and testimony available to the District Judge, we conclude that the Colemans have not satisfied the *Boeing* criteria. *See* United States v. Williams, 5 Cir. 1971, 441 F.2d 637, 644. In the factual context *sub judice*, it is evident that Associated fulfilled its duty to refrain from willfully or wantonly injuring Ida Darleen. Consequently we shall not disturb the District Court's disposition of this controversy.

Affirmed.